**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **SHERRY HAMIL,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. JKB-26-0806** |
| **MACK TRUCKS, INC.,** | * | |
| **Defendant.** | * | |

* * * * * * * * * * * *

## MEMORANDUM

Pending before the Court is Plaintiff Sherry Hamil's "Motion for Leave to File Supplemental Complaint" (hereinafter Motion for Leave). (ECF No. 23.) Defendant Mack Trucks, Inc. ("Mack Trucks") opposes the Motion. (ECF No. 26.) For the following reasons, the Motion will be denied.

## I. Background

Hamil is an "openly gay woman over the age of 40" who has worked for Mack Trucks in Hagerstown, Maryland, for more than 25 years. (ECF No. 1 ¶ 2.)[1] She filed this suit on February 26, 2026, alleging that her colleagues discriminated against her due to her sexual orientation and age, and that Mack Trucks retaliated against her after she reported that misconduct to Human Resources ("HR"). (*Id.* ¶¶ 3–5.) As is relevant here, Hamil alleges that Mack Trucks failed to act on her reports of repeated sexist behavior by her lab manager, Marcelino Carvahlo (*id.* ¶¶ 31–41), and by a fellow lab worker, Jeffrey Simeon (*id.* ¶¶ 42–60). Hamil also alleges that Mack Trucks

[1] The Complaint refers to Hamil's employer as Volvo Group North America, LLC, but she was employed by Mack Trucks. The Court previously substituted Mack Trucks as the defendant in place of Volvo. (ECF No. 12.) The Court will take references to Volvo in the Complaint as references to Mack Trucks.

suspended her without pay due to a baseless HR report from Simeon, while simultaneously ignoring her numerous reports of Simeon's sexism. (*Id.* ¶¶ 61–67.) After she returned to work, Hamil alleges that HR liaison Matthew Hanegraaf told her to re-word her earlier HR complaints and, when she refused, berated her and told her she must "take responsibility" for her share of the harassment. (*Id.* ¶¶ 70–74.)

From these and other allegations, Hamil brings eight claims against Mack Trucks under Title VII, the Age Discrimination and Employment Act, and the Maryland Fair Employment Practices Act ("FEPA"), including claims for retaliation, a hostile work environment, and sex and age discrimination. (*Id.* ¶¶ 107–53.) After Mack Trucks answered the Complaint, the Court issued a Scheduling Order which set a June 29, 2026 deadline to move for joinder of additional parties and amendment of pleadings. (ECF No. 17.)

On August 17, 2026, Hamil moved for leave to file a supplemental complaint. (ECF No. 23.) Her proposed pleading would replace the original Complaint, adding a section of new factual allegations and two new retaliation counts. (ECF No. 23-1 ¶¶ 107–128, 152–157, 182–187.)

Some of Hamil's proposed allegations predate this suit. Hamil alleges that, in January 2026, a coworker's nitric-acid dilution in the Metallurgy Lab at which she worked nearly exploded. (*Id.* ¶ 108.) Hamil further alleges that, in February 2026, when running a test on a crankshaft, she found no records of a prior test being run, even though Simeon "had attached alleged completed reports" of one. (*Id.*) Following these safety and documentation failures, Hamil alleges that safety representatives told her and others in her lab to "document incidents in writing," and that Hamil recorded "daily events and any issues in a desk calendar." (*Id.* ¶¶ 109–110.)

The remaining allegations concern events from July 2026, after this suit was filed. Hamil alleges that, on July 17, 2026, Simeon—her lab colleague and the subject of her prior complaints—

emailed management, HR, and union representatives requesting an investigation of Hamil, asserting that her desk notes were intended to target him. (*Id.* ¶¶ 113–115.) Hamil alleges that Mack Trucks acted quickly on Simeon's request, giving her last-minute notice of a meeting with HR on July 22. (*Id.* ¶ 116.) At the meeting, HR liaison Hanegraaf spent most of the time interrogating her about her desk calendar and requesting her notes, during which Hamil started to cry. (*Id.* ¶¶ 117–119.) But near the end of the meeting, Hanegraaf's "tone abruptly changed" and he told her, "I don't see anything wrong with taking notes on a calendar," and advised her to be "more guarded." (*Id.* ¶¶ 120–121.) Her union representative also told her she had not "done anything wrong." (*Id.*) Finally, Hamil alleges that Carvahlo offered her the rest of the day off without pay, which she declined, and that Carvahlo told her he felt "manipulated by [Simeon] to treat her this way." (*Id.* ¶¶ 124, 126.)

Hamil claims that Mack Trucks' handling of the July investigation and meeting was retaliation for her bringing this lawsuit. Both of her new counts are titled "Retaliation – July 2026 Incident." Proposed Count V (Title VII) repeats existing Count I but adds this lawsuit as a fifth protected activity. (*Compare id.* ¶¶ 152–157, *with id.* ¶¶ 129–134.) Proposed Count X (FEPA) repeats existing Count VI but adds the July investigation as a sixth adverse action. (*Compare id.* ¶¶ 182–187, *with id.* ¶¶ 158–163.) Mack Trucks opposes the Motion for Leave, arguing that Hamil lacks good cause to modify the scheduling order and that her new claims are futile. (ECF No. 26.)

## II. Legal Standard

When a party moves for leave to supplement a pleading after the passing of the deadline for amendment set forth in a court's scheduling order, such a motion "will only be granted if it satisfies both the 'good cause' standard of Federal Rule of Civil Procedure 16(b)(4) and the standard" for amending or supplementing pleadings set out in Rule 15. *G.W. Aru, LLC v. W. R.*

*Grace & Co.-Conn.*, 344 F.R.D. 446, 449 (D. Md. 2023) (quoting *Timbers v. Telligent Masonry, LLC*, Civ. No. JKB-21-00293, 2022 WL 17541751, at *3 (D. Md. Dec. 8, 2022)).

A finding of good cause "depends on the diligence of the party seeking amendment." *Eichin v. Ethicon Endo-Surgery, LLC*, 173 F.4th 124, 127 (4th Cir. 2026); *see also Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012). The "timeliness of the motion to amend" and the movant's reasons for its delay are therefore central. *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 520 (D. Md. 2014). Good cause does not exist, for example, when "the moving party knew of the underlying conduct giving rise to a claim but simply failed to raise it in an initial complaint." *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 152 (4th Cir. 2020).

If the Court finds that good cause exists, it then applies the Rule 15 standard. *Cook*, 484 F. App'x at 814–15. The Rule 15 "standard for granting leave to supplement a pleading is 'nearly identical' to the standard governing whether to grant a motion to amend." *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 665 (E.D. Va. 2010) (quoting *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002)). "In either situation, leave should be freely granted, and should be denied only where 'good reason exists'" to do so. *Franks*, 313 F.3d at 198 n.15 (quoting *Walker v. United Parcel Serv.*, 240 F.3d 1268, 1278 (10th Cir. 2001)). Indeed, leave to amend or supplement "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 446 (4th Cir. 2001).

## III. Analysis

The Scheduling Order in this case set a June 29, 2026, deadline to amend pleadings, which passed before Hamil filed her Motion for Leave. (ECF Nos. 17, 23.) So, Hamil must show good cause under Rule 16(b)(4) before the Court can reach Rule 15. *Cook*, 484 F. App'x at 814–15.

**A. Hamil has good cause to amend the scheduling order under Rule 16(b)(4).**

Hamil argues that hers is the paradigmatic situation for supplementing a complaint because her two new retaliation claims rest "entirely on events that postdate the June 29, 2026 deadline to amend." (ECF No. 23 at 7.) Both incidents alleged in her proposed supplemental complaint occurred in July 2026: she alleges that Simeon asked Mack Trucks to investigate her note-taking behavior on July 17, 2026, and she alleges that Mack Trucks began a retaliatory investigation of those complaints starting on July 22, 2026. (*Id.*)

Mack Trucks does not dispute that those events postdate the June 29 amendment deadline; rather, it argues that Hamil lacks good cause for the proposed pleading "as a whole" because Hamil also attempts to smuggle in facts from January and February 2026 that she knew about before the filing deadline. (ECF No. 26 at 6–7 ("The proposed pleading adds a January 2026 laboratory incident, a February 13, 2026 testing dispute, related safety directives, and Plaintiff's desk-calendar practice—all matters known before the amendment deadline.").)[2] The Court finds, however, that Hamil has shown good cause for modifying the scheduling order both as to the July events that postdate the filing deadline and as to the contextual facts that preceded it.

The "touchstone" of the good cause requirement is "diligence" because "only diligent efforts to comply with the scheduling order" will suffice. *Terran Biosciences, Inc. v. Compass Pathfinder Ltd.*, Civ. No. ELH-22-1956, 2025 WL 3703816, at *18 (D. Md. Dec. 19, 2025) (quoting *Faulconer*, 808 F. App'x at 152). Diligence depends on a plaintiff's reasons for their

[2] Mack Trucks also contends that proposed Counts V and X are redundant of existing Counts I and VI. (ECF No. 26 at 14–15.) It is true that these counts incorporate every preceding allegation and repeat paragraphs from existing Count I and Count VI verbatim. (*Compare, e.g.*, ECF No. 23-1 ¶ 155, *with id.* ¶ 132.) But incorporation by reference is a common practice in this District and is not a pleading defect. *Baxter v. AmeriHome Mortg. Co.*, 617 F. Supp. 3d 346, 351 (D. Md. 2022). Moreover, Mack Trucks has had no difficulty understanding and responding to the new counts. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (stating that the purpose of the pleading rule is to provide the defendants with "fair notice" of the claims and the "grounds" for relief).

tardiness. If a plaintiff missed the filing deadline simply because they were not diligent in their litigation efforts, then the "inquiry should end." *Id.* (quoting *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002)). Similarly, a plaintiff cannot sit on already-ripe claims in anticipation of finding better facts after a deadline. *Id.* at *25 (collecting cases). But if a plaintiff was tardy because "at least some of the evidence needed . . . to prove [their] claim did not come to light until after the amendment deadline," they have good cause. *G.W. Aru*, 344 F.R.D. at 449 (cleaned up).

As to the July 2026 events, the inquiry is straightforward: no amount of diligence could have produced allegations about events that had not yet occurred, and Hamil moved for leave less than four weeks after the July 22 meeting. Her attempt to bring the case "up to date" with those new allegations is the exact situation for which Rule 15(d) contemplates moving for a supplemental pleading. *See* 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1504 (3d ed. 2008) ("Rule 15(d) provides that a court may permit a party to serve a supplemental pleading setting forth transactions, occurrences, or events that have happened since the filing of the pleading to be supplemented, thereby bringing the case up to date.") Hamil therefore has good cause for moving to supplement her Complaint with these July allegations.

As to the January and February facts, the inquiry here asks whether the filing deadline "cannot reasonably be met despite the party's diligence," *Cook*, 484 F. App'x at 815, and a party cannot reasonably be expected to plead facts that do not bear on any pending claim. Before July 2026, the January and February facts were immaterial to the suit; indeed, Mack Trucks itself characterizes them as safety and quality-control matters unrelated to any protected activity. (ECF No. 26 at 8.) Those facts only became material when Simeon's July 17 complaint put Hamil's desk-calendar notes at issue. Because Hamil pleads the January and February facts only as context

for claims that did not exist until after the amendment deadline, good cause extends to them as well.[3]

**B. Hamil's new retaliation claims would be futile under Rule 15(d).**

As discussed, under Rule 15, leave to supplement should be denied only "(1) when the opposing party would be prejudiced; (2) when the amendment is sought in bad faith; or (3) when the proposed amendment would be futile." *G.W. Aru*, 344 F.R.D. at 449 (quoting *Timbers*, 2022 WL 17541751, at *4). Mack Trucks argues that Hamil's proposed retaliation claims are futile. (ECF No. 26 at 7–13.) The Court agrees.

A court may deny leave to supplement as futile when the proposed additions would not survive a motion to dismiss for failure to state a claim. *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008); *see also Van Leer v. Deutsche Bank Sec., Inc.*, 479 F. App'x 475, 479 (4th Cir. 2012) ("We adjudge amendment futile when the proposed amended complaint fails to state a claim."). As in a motion to dismiss, the Court must take the facts in the proposed supplemented complaint in the light most favorable to Hamil, "but it need not accept legal conclusions drawn from those facts or unwarranted inferences, unreasonable conclusions, or arguments." *Van Leer*, 479 F. App'x at 479 (cleaned up) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Leave to amend or supplement, however, "should only be denied on the ground of

[3] Mack Trucks separately argues that Hamil's proposed allegations exceed Rule 15(d) because that rule permits supplementation only as to events "that happened *after* the date of the pleading to be supplemented." (ECF No. 26 at 14 (citing *Tafah*, 2026 WL 124306, at *2).) Because the Court denies the Motion on futility grounds, it need not decide whether these allegations could be added by supplement or would require leave to amend under Rule 15(a).

futility when the proposed amendment is clearly insufficient or frivolous on its face." *Miller v. Md. Dep't of Nat. Res.*, 813 F. App'x 869, 880 (4th Cir. 2020) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

**1. Proposed Count V: Retaliation Under Title VII**

To state a retaliation claim, a plaintiff must plausibly allege that "(1) she engaged in a protected activity; (2) [her] employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action." *Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018) (citation omitted). The Court need not discuss all three elements because it finds that proposed Count V fails on the second.

An adverse action in a retaliation claim, unlike in a substantive discrimination claim, "need not be employment- or workplace-related." *Acheneje v. Univ. of Md. Med. Sys. Corp.*, Civ. No. MJM-25-1126, 2026 WL 2880533, at *9 (D. Md. Sept. 25, 2026) (quoting *Strothers*, 895 F.3d at 327 n.3). An internal investigation "could serve as the requisite adverse action to establish a plausible retaliation claim," but it must be "sufficiently serious to qualify as an adverse action." *Yampierre v. Balt. Police Dep't*, Civ. No. ELH-21-1209, 2022 WL 3577268, at *38 (D. Md. Aug. 18, 2022). An employer's action qualifies as adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Herkert v. Bisignano*, 151 F.4th 157, 166 (4th Cir. 2025) (stating that a retaliation claim requires a plaintiff to allege "that a reasonable employee would have found [the employer's action] to be materially adverse, in that it might have dissuaded a reasonable worker from pursuing" protected activity) (quotation marks and citation omitted). As the Fourth Circuit recently clarified, "whatever you call the 'materiality' standard, it requires significant harm." *Israelitt v. Enter. Servs. LLC*, 78 F.4th 647, 656–57 (4th Cir. 2023); *see also*

*Muldrow v. City of St. Louis*, 601 U.S. 346, 357 (2024) (acknowledging that courts construe retaliation claims to apply "only when the retaliatory action is 'materially adverse,' meaning that it causes 'significant' harm") (quoting *Burlington*, 548 U.S. at 68). An adverse action does not encompass "petty slights or minor annoyances that often take place at work and that all employees experience." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 213 (4th Cir. 2022) (citation omitted).

Hamil contends that Mack Trucks "subjected her to a materially adverse action by singling her out for investigation [at] the July 22 meeting." (ECF No. 23 at 9.) She argues that Mack Trucks' actions related to that investigation—conducting "a targeted investigation into [her] alone, summoning her to an early-morning meeting on minimal notice, and berating her for documenting safety issues at management's own direction"—would deter any reasonable worker from reporting a charge of discrimination. (*Id.*) The Court finds otherwise.

None of Mack Trucks' alleged actions related to its investigation qualify as adverse actions. Taking Hamil's allegations as true, her July 22 meeting with HR was unpleasant: she was interrogated about her notes, asked to produce them, and became tearful. (ECF No. 23-1 ¶¶ 117–119.) But this Court has found that verbal reprimands do not generally rise to the level of an adverse action. *Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F. Supp. 2d 480, 492 (D. Md. 2013). Nor do "incidents of yelling or bullying." *Staggers v. Becerra*, Civ. No. ELH-21-0231, 2021 WL 5989212, at *17 (D. Md. Dec. 17, 2021) (collecting cases); *see also Burlington*, 548 U.S. at 68 (noting that the sporadic use of abusive language is not an adverse action). Indeed, these behaviors are more akin to the "[p]etty slights, minor annoyances, and simple lack of good manners" that are part and parcel of the workplace. *Burlington*, 548 U.S. at 68.

And Hamil does not allege any significant harm resulting from the internal investigation. The July 22 meeting ended with Hanegraaf telling her he saw "nothing wrong with taking notes

on a calendar," and her union representative telling her she had not "done anything wrong." (ECF No. 23-1 ¶¶ 120–121.) Hamil also declined an offer of unpaid leave and finished her shift. (*Id.* ¶ 124.) That distinguishes this case from *Franovich v. Hanson*, 687 F. Supp. 3d 670 (D. Md. 2023), on which Hamil relies. (ECF No. 30 at 5.) There, an employer opened a "management inquiry" into the plaintiff's role in a "conflict" at a branch meeting a few weeks after she filed a formal discrimination complaint. *Franovich*, 687 F. Supp. 3d at 679. But that inquiry was one of a series of alleged retaliatory acts that together satisfied the adverse-action element, along with a counseling memorandum that cited the plaintiff's discrimination complaint, a proposed suspension, a downgraded performance evaluation, and physical threats. *Id.* at 685. Moreover, the same court dismissed a separate retaliatory-investigation claim in part because the plaintiff did not allege "what resulted from the investigation." *Id.* at 688–89. Similarly, the July investigation here stands alone, and nothing adverse resulted from it. A reasonable worker told by her employer at the conclusion of an internal investigation that she had done nothing wrong, and who faces no other negative repercussions, would not be dissuaded from pursuing a discrimination charge.[4]

Hamil argues that the Court should consider the greater context of her lawsuit in deciding whether Mack Trucks' actions at the meeting were adverse. Indeed, "[c]ontext matters" in a retaliation claim because an "act that would be immaterial in some situations is material in others." *Burlington*, 548 U.S. at 68 (citation omitted). Hamil specifically points to her 2024 suspension as context. (ECF No. 30 at 5.) The same HR liaison who presided over the July meeting, Hanegraaf, also suspended Hamil indefinitely without pay in 2024 in response to a different complaint from

[4] A favorable resolution to a work dispute does not always erase the harm suffered from an investigation. In *Burlington*, for example, the Supreme Court determined that an employee's suspension without pay was an adverse action despite the employee being later reinstated with backpay. 548 U.S. at 72–73. But the employee there went 37 days without pay before she was vindicated. Here, Hamil was cleared of wrongdoing before she left the room.

Simeon, and berated her when she returned to work. (ECF No. 23-1 ¶¶ 62–64, 71.) That history may explain why Hamil found the July meeting distressing. But it does not turn her initial distress into the significant harm required of a retaliation claim. Indeed, by the end of the meeting, Hamil alleges that Mack Trucks did the opposite of what it did two years earlier: it heard her account, told her that keeping notes was permissible, and imposed no material consequences. Even in context, Mack Trucks' actions at the July meeting would not dissuade a reasonable employee from engaging in protected activity, and so Hamil's proposed Count V is clearly insufficient.

Nor can the July investigation independently support the retaliatory hostile work environment theory that Hamil references in proposed Count V, in which she would add the investigation and meeting as a "distinct adverse action." (ECF No. 30 at 8.) For the same reasons as above, Mack Trucks' actions related to the July internal investigation in total were not "sufficiently severe or pervasive that [they] would dissuade a reasonable worker from making or supporting a charge of discrimination." *Laurent-Workman*, 54 F.4th at 217–18; *see also Fordyce v. Prince George's Cnty.*, 43 F. Supp. 3d 537, 552 (D. Md. 20-14) (stating that retaliatory hostile work environment claims still require the plaintiff to allege a materially adverse employment action). Hamil already alleges a hostile work environment theory in Count I, and the newly alleged July investigation cannot by itself support a new, distinct hostile work environment claim.[5]

[5] In her Reply, Hamil asks in the alternative that the Court "incorporate[] this lawsuit as protected activity and the July 2026 investigation as further instance[s] of retaliatory harassment under Count I." (ECF No. 30 at 8.) The Court declines to do so. "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006). Here, Hamil raised this request for the first time in her Reply memorandum, but she argued for the opposite in her Motion for Leave. (*See* ECF No. 23 at 9 ("The new facts alleged by Plaintiff form the basis of a separate count of retaliation.").) And Hamil has not filed a proposed pleading reflecting this alternative.

### 2. Proposed Count X: Retaliation Under FEPA

Hamil's proposed Count X (FEPA) mirrors her proposed Count V (Title VII) in that the only new adverse action it would add is the July 2026 investigation previously discussed. (ECF No. 23-1 ¶ 183(f).) Maryland's FEPA is the "state analogue of Title VII," and so "courts judge . . . retaliation claims brought under MFEPA by the same standards as those same claims brought under Title VII." *Lowman v. Md. Aviation Admin.*, Civ. No. JKB-18-1146, 2019 WL 133267, at *4 (D. Md. Jan. 8, 2019) (citations and internal quotation marks omitted). For the same reasons discussed above, proposed Count X is futile as well.

## IV. Conclusion

Hamil's Motion seeks leave only to assert the two retaliation claims. (ECF No. 23 at 1.) And her alternative request to supplement Count I of the Complaint is not properly before the Court. (*See* supra note 5.) For the reasons stated above, Hamil's Motion for Leave will be denied. A separate order follows.

DATED this 24 day of November, 2026.

BY THE COURT:

James K. Bredar
James K. Bredar
United States District Judge